UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

PERRY PHILLIPS, et al.,            )
                                   )
        Plaintiffs                 )
                                   )
    vs.                            )    Case No.  1:09-cv-00431-HGD
                                   )
WASHINGTON GROUP                   )
INTERNATIONAL, INC.,               )
                                   )
        Defendant                  )

## MEMORANDUM OPINION

The above-entitled civil action is before the court on the Motion for Summary Judgment filed by defendant, Washington Group International, Inc. (Doc. #63). Also for consideration is the Motion to Certify Class Conditionally and to Facilitate 29 U.S.C. §216(b) Notice filed by plaintiffs (Doc. #57) and the Motion for Summary Judgment Regarding Opt-Ins filed by defendant (Doc. #88).

This matter is before the undersigned U.S. Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73, Fed.R.Civ.P. (*See* Doc. #40, Consent to Jurisdiction of U.S. Magistrate Judge).  Plaintiffs, Perry Phillips and Roger Smitherman, brought this action against Washington Group International, Inc. (WGI), claiming violations of the Fair Labor Standards Act

(FLSA), 29 U.S.C. § 201, *et seq.*, and seeking certification to pursue a collective action under that Act. The complaint was filed on March 5, 2009.

On May 12, 2009, the court entered an Initial Order Governing All Further Proceedings in this case. (Doc. #37). That Order required, among other things, that the responsive submission of a party opposing summary judgment be filed not later than 21 days after the motion for summary judgment is filed. (*Id.*, Appendix II at 16). WGI filed a Motion for Summary Judgment on September 28, 2009. (Doc. #63). Under the Initial Order, a responsive submission was due from plaintiffs no later than October 19, 2009. On that date, plaintiffs' counsel filed a document titled as Plaintiffs' Response to Defendant's Motion for Summary Judgment. (Doc. #83). Rather than containing a responsive submission, this document contained a motion to allow plaintiffs additional time to conduct discovery and sought an extension of 45 days, until December 3, 2009, to file their responsive submission. (*Id.* at ¶ 5). Because this document was filed as a responsive submission rather than a motion, it did not come to the attention of the court and no ruling was entered by the court on the motion for an extension of time.

Nonetheless, December 3, 2009, came and went with no responsive submission being filed by plaintiffs. A response to defendant's motion for summary judgment was belatedly filed by plaintiffs on January 22, 2010. (Doc. #92). It contained no

motion for permission to file it out of time or any explanation for its late filing. Finding the excuse for the late filing subsequently provided by plaintiffs' counsel (Doc. #95) to be inadequate, the court struck plaintiffs' response. (Doc. #97).

In addition to its motion for summary judgment regarding plaintiffs' underlying claims, defendant also filed a Motion for Summary Judgment Regarding Opt-Ins on December 14, 2009. (Doc. #88). Under the Initial Order, a responsive submission was due by January 4, 2010. However, no response by plaintiffs was received by that date either. No request for an extension of the deadline to respond to the summary judgment motion was requested by plaintiffs' counsel at any time prior to the January 4, 2010, due date. A response to this motion was eventually filed on January 21, 2010. (Doc. #90). It contained no motion for permission to file it out of time or any explanation for its late filing. Finding the explanation subsequently offered by plaintiffs (Doc. #95) to be inadequate, this response also was stricken by the court. (Doc. #97).

Consequently, before the court are defendant's unopposed motions for summary judgment. Although unopposed, these motions are not automatically due to be granted. Rule 56(e)(2), Fed.R.Civ.P., states:

> ***Opposing Party's Obligation to Respond.***
> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its

> response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, *if appropriate*, be entered against the party.

(emphasis added). Thus, the court is still obligated to review the pleadings and the evidentiary submissions that are properly before the court in order to determine if summary judgment is appropriate under the applicable law.

> Although Rule 56(e) does not allow a party to "rest upon the mere allegations or denials of his pleading" when his adversary moves for summary judgment, see, *e. g., Bruce Construction Corp. v. United States*, 5 Cir., 1957, 242 F.2d 873, 875, the Rule does not relieve the movant of his duty to establish the absence of a genuine issue as to material facts. *Adickes v. S. H. Kress & Company*, 1970, 398 U.S. 144, 159-161, 90 S.Ct. 1598, 1609-1610, 26 L.Ed.2d 142, 155-156; *Sweet v. Childs*, 5 Cir., 1975, 507 F.2d 675, 679. *See generally* 6 J. Moore, Federal Practice P 56.15(3), pp. 56-463 56-489 (2d Ed. 1976). The moving party still has the initial burden, under Rule 56(c), of showing the absence of a genuine issue concerning any material fact, *Adickes v. S. H. Kress & Company, supra,* 398 U.S. at 159, 90 S.Ct. at 1609, 26 L.Ed.2d at 155, and of showing that judgment is warranted as a matter of law, *United States Steel Corp. v. Darby*, 5 Cir., 1975, 516 F.2d 961, 963. In deciding whether to grant summary judgment, the District Court "must draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *United States Steel Corp. v. Darby*, 5 Cir., 1975, 516 F.2d 961, 963.

*Boazman v. Economics Laboratory, Inc.*, 537 F.2d 210, 213-14 (5th Cir. 1976).[1]

Nonetheless, "the court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her." *Pinto v. Universidad De Puerto Rico*, 895 F.2d 18, 19 (1st Cir. 1990); *see also Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it"); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F.Supp.2d 1228, 1236 (M.D.Ala. 2000) ("[i]t is not for the court to manufacture arguments on Plaintiff's behalf"). Accordingly, plaintiffs' failure to proffer timely argument or authority in response to defendant's motions is at their peril.

## COMPLAINT

The claims of plaintiffs Smitherman and Phillips in this case are limited to Count I as it pertains to WGI, all other parties and claims having previously been dismissed. (*See* Docs. #33, 34, 50 & 51). However, in their complaint, plaintiffs seek

---

[1] All decisions of the former Fifth Circuit handed down prior to September 30, 1981, constitute binding precedent on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

to add other plaintiffs by means of a collective action. (Doc. #1, Complaint, at ¶¶ 11-16).

According to the complaint, plaintiffs' workday began when they passed through defendant's security gate and were subjected to an extensive security protocol. Thereafter, they were required to retrieve protective gear and go through additional security screening procedures. Plaintiffs allege that they often were made to begin their shifts before the required start time and were not compensated for this additional work. They also claim that they were rarely allowed to take an uninterrupted 30-minute lunch break, despite being docked the full 30 minutes for each meal period. In addition, they claim that, because of the extensive security protocol, they worked a great deal at the end of shifts for which they were not compensated.

According to plaintiffs, defendant was aware of the fact that they should have been compensated for regular and overtime hours worked for the preceding three years and that it intentionally implemented its system to deny them adequate compensation as required by law. Plaintiffs claim that this failure to pay them adequately for time worked was a violation of the FLSA. They also allege that there were other similarly situated employees performing the same or similar work without adequate remuneration.

Accordingly, in Count I, plaintiffs allege that defendant required them to work in excess of 40 hours per week without compensation for some regular and some overtime hours, in violation of the FLSA. Plaintiffs also request that all similarly situated employees be given the opportunity to opt in to the present suit as a collective action authorized under 29 U.S.C. § 216(b). They seek payment for uncompensated regular and overtime hours worked for the preceding three years, liquidated damages, attorneys fees and the expenses of litigation.

## ARGUMENTS

Defendant asserts that summary judgment is proper because plaintiffs cannot offer substantial admissible evidence (1) that they worked over 40 hours in one or more weeks without receiving one-and-a-half times their regular rate of pay for overtime worked, (2) that WGI knew or should have known about the uncompensated overtime, or (3) that the foregoing occurred during a covered period of employment with WGI.

According to defendant, binding precedent forecloses recovery for time spent going through security checkpoints at the beginning and end of the shifts; documentation shows no significant lunch interruptions; and plaintiffs have no specific admissible evidence of unpaid time worked to contradict time and pay records showing overpayment, rather than underpayment, of wages.

The evidence submitted reflects that the site, a facility run by the Department of Defense (DOD) that destroys chemical weapons on the Anniston Army Depot, has a number of security checkpoints through which plant employees must pass each day. According to Kenneth R. Ankrom, Plant Manager of the Anniston Chemical Agent Disposal Facility, the first section consists of the entrance to Depot property; the second section consists of the ammunition limited area (ALA); and the third section consists of the chemical limited area (CLA).  The first section involves a drive-through station manned by a DOD security guard near the Depot entrance. Passing through this station takes a matter of five seconds unless the guard chooses to stop and search the vehicle, which takes about five minutes.  Entrance to the second section requires a drive through a second post also manned by DOD security personnel. Passing through this section requires about five seconds because no searches are conducted here. Entrance into the third section consists of parking one's vehicle, picking up a safety mask carrier at the "mask trailer," and walking through an entry control facility (ECF).  The walk from the mask trailer to the ECF takes less than one minute.  The ECF itself houses DOD security guards monitoring the entrance which consists of two turnstiles and a metal detector where a badge must be swiped in order to progress into the facility grounds.  According to defendant, this process takes one to two minutes.  (Def. Ex. 1, Ankrom Aff.; Def. Ex. 6, Rhodes

Decl., at ¶ 5; Def. Ex. 9, Williams Decl., at ¶ 5).  Plaintiffs, however, assert that there are times when there is a long line of employees waiting to get into the facility and, on those occasions, it can take 15 to 35 minutes to get from the mask trailer to their workstations.  (Phillips Depo. at 37-38).

Plaintiffs work "inside the fence," which means inside the third section or the CLA as accessed through the ECF.  Entrance through the ECF is used to reach the employee locker room and the other facilities that comprise the plant and related structures.  (*Id.*).

WGI employees were not paid for time spent going through checkpoints prior to picking up their pouches at the mask trailer at the start of a shift or after dropping off their masks at the trailer at the end of their shifts.  (Def. Ex. 2, Burchett Aff., at ¶ 1(c)(1)).  Under WGI policy, each employee received an unpaid 30-minute lunch break during the shift, and that policy stated that employees must not be interrupted during lunch.  (Def. Ex. 1, Ankrom Aff., at ¶ 5(b); Def. Ex. 2, Burchett Aff., at ¶ 3(a)-(b) and Attachment B; Phillips Depo. at 74; Smitherman Depo. at 41-42).  All employees, including plaintiffs, were trained in a policy that required an uninterrupted 30-minute lunch break and an obligation to report any violations.  Neither plaintiff ever reported any violation.  (Def. Ex. 2, Burchett Aff., at ¶ 3(e)(3)(a) and Attachment B; Smitherman Depo. at 130).

Until February 2009, when a time clock was installed, employees such as plaintiffs kept track of the times that they worked on time sheets. All WGI employees were trained in timekeeping policy that instructed them in how to complete their time sheets, how they were to be paid from when they arrived at the mask trailer at the start of a shift until they returned to the mask trailer at shift's end, how to report any time worked not reflected on time sheets or pay, how they were entitled to time-and-a-half their regular rate for overtime, how to report any instance when they worked overtime without being paid for it, and how to report any interruption of the lunch period. (Def. Ex. 2, Burchett Aff., at ¶ 3 and Attachment B; Smitherman Depo. at 41-42).

The WGI policy regarding which plaintiffs were trained required employees, including Phillips and Smitherman, to record all time spent working and provided that this time began and ended at the mask trailer and that they were to receive an uninterrupted 30 minutes each day for a meal period. (Def. Ex. 2, Burchett Aff., at ¶ 3). WGI conducted weekly audits of time sheets to determine if they were completed accurately and selected random groups of employees to interview to ascertain if employees understood the policy, understood their obligations, and recognized their right to report pay discrepancies and have them promptly corrected. (*Id.* at ¶ 3(e)(3)(b)).

WGI also conducted training of employees on the process involved in raising any pay issues. It also regularly corrected time sheets and pay when employees utilized this process when investigation reflected that a correction was due. (Def. Ex. 1, Ankrom Aff., at ¶ 5(f) and Attachment E; Def. Ex. 2, Burchett Aff., at ¶ 3(e)(3)(a)-(e) and Attachment M-S). Neither Phillips nor Smitherman ever reported being underpaid or not receiving pay for time worked, or not receiving the proper rate of pay for overtime. (Phillips Depo. at 22-24; Smitherman Depo. at 44, 130).

Phillips testified that he knows of no specific weeks when he worked over 40 hours and was not paid time and a half. (Phillips Depo. at 79-80). Most of the work Smitherman believes he should have been paid for involves time spent going through the Army's security checkpoints at the start of his shift and the time it took him to go back through them at the end of his shift. (Smitherman Depo. at 54-64). Furthermore, WGI records reflect that both Phillips and Smitherman received overtime pay during a number of weeks when they did not actually work over 40 hours. (Phillips Depo. at 80-93; Def. Ex. 11 at 236, 256, 280, 317, 319, 322, 323, 333; Def. Ex. 2, Burchett Aff., at ¶ 3(e)(1)(a) and Attachments C & D; Smitherman Depo. at 44, 46-48, 81; Def. Ex. 21 at 490, 494, 496, 515, 528; Def. Ex. 22). Neither Phillips nor Smitherman provided any facts that could lead to a conclusion that WGI

knew or should have known that either was not properly paid for all time worked. (Phillips Depo. at 134, 163-64; Smitherman Depo. at 118-19).

## DISCUSSION

In order to prevail on their claim in this case,

> Plaintiffs must prove that they were suffered or permitted to work without compensation. 29 U.S.C. § 201 et seq. Courts have interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the Board knew or should have known of the overtime work. *See Reich* [*v. Dep't of Conservation and Nat. Res.*], 28 F.3d [1076] at 1081-82 [(11th Cir. 1994)]; *see also* 29 C.F.R. § 785.11 (interpreting the "suffer or permit to work" requirement to mean that an employer violates the FLSA when it "knows or has reason to believe that he is continuing to work and the time is working time.").

*Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1314-15 (11th Cir. 2007).

Furthermore, 29 U.S.C. § 254(a)(2) exempts an employer from liability for wages for "activities which are preliminary to or postliminary to said principal activity or activities." The Supreme Court has interpreted this section to apply when an activity before or after the principal work activity is not an "integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section [254(a)(1)]." *Steiner v. Mitchell*, 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956). This includes

time spent by an employee going through security screenings which, though necessary for employees to perform their work, did not primarily benefit the employer. *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398-400 (5th Cir. 1976). *See also Bonilla v. Baker Concrete Constr. Co.*, 487 F.3d 1340 (11th Cir.), *cert. denied*, 552 U.S. 1077, 128 S.Ct. 813, 169 L.Ed.2d 607 (2007) (time spent going through security screening not compensable).

Likewise, although plaintiffs claim that they should have been paid for their lunch periods that were interrupted by work, the records submitted by WGI reflect no significant lunch interruptions from the work-related "entries"[2] which plaintiffs asserted to be the cause of these interruptions. During the three years prior to filing this suit, Phillips participated in 2 "Level A" entries scheduled between 11 a.m. and 1 p.m., neither of which would have prevented him from getting his lunch. (Def. Ex. 1, Ankrom Aff., at ¶ 7(d) and Attachment G-2; Phillips Depo. at 113-114).

Phillips also performed numerous "Level C" entries during this time period. However, none were scheduled at a time that would have interfered with lunch, and no other duties he performed resulted in any significant interruption of his lunch.

---

[2] An "entry" is an exercise related to plaintiffs' jobs of destroying chemical weapons. Though not described in great detail, it is clear that any "entry", once begun, had to be completed before the employees participating could eat lunch or leave work. Furthermore, the process of preparing to undertake an entry and cleaning up afterward could be time-consuming.

(Def. Ex. 1, Ankrom Aff., at ¶ 7(f) and Attachment G-2). Work schedules, records completed by Phillips showing time off during the relevant period, work and entry records he completed during the relevant period, and his own deposition testimony reflect that Phillips participated in only two entry-based interruptions of his regularly scheduled lunch period, and no lunch interruptions between March 5, 2006, and February 9, 2007, that prevented an uninterrupted 30-minute meal period at some other time during the shift during this time period.

During the relevant time period, Smitherman was employed from March 5 to October 27, 2006. (Def. Ex. 2, Burchett Aff., at ¶ 1(d)(2)). He performed no work at all for 11 weeks of the relevant period. (Smitherman Depo. at Def. Ex. 21 at 503 and Def. Ex. 22; Def. Ex. 2, Burchett Aff., at ¶ 3(e)(1)(c); Smitherman Depo. at 79-81, Def. Ex. 21 at 535-68, and Def. Ex. 22). He also received overtime for time periods when he did not actually work over 40 hours in a week. (Smitherman Depo. at 44-48, 81, and Def. Ex. 21 at 490, 494, 496, 515 and 528; Defendant. Ex. 2, Burchett Aff., at ¶ 3(e)(1)(a) and Attachment D).

In addition, work records and deposition testimony of Smitherman do not reflect any specific entry-based interruptions, other than occasional radio calls, or other lunch period interruptions between March 5 and October 26, 2006, that prevented him from obtaining an uninterrupted meal period at some time during his

shift. (Def. Ex. 1, Ankrom Aff., at ¶¶ 5(b), 8, 18(b)(3); Smitherman Depo. at 106-07 (radio calls for Level A entry interrupted lunch on occasions), 107-15 (other various interruptions cited, however, how often this occurred is unknown)). Smitherman was not actually involved in a Level A entry during the relevant time period and cannot point to specific interruptions that would have prevented an uninterrupted 30-minute lunch at some time during his shift. (Def. Ex. 1, Ankrom Aff., at ¶8(d) and Attachment G-4). Lunches interrupted occasionally or taken at different times does not make the lunch period compensable. *See Roy v. Lexington County*, 141 F.3d 533, 546 (4th Cir. 1998) (interrupting 27% of lunches not enough); *Gaylord v. Miami-Dade County*, 78 F.Supp.2d 1320, 1326 (S.D.Fla. 1999) (monitoring radio during lunch not compensable time). There is no admissible evidence of unpaid time worked which contradicts the time and pay records submitted by defendant.

There is also no admissible evidence to show that WGI knew or should have known that plaintiffs were not receiving overtime that they had earned. WGI had a time-keeping policy and process in place to keep track of the time worked by each employee. Because of the nature of the work, it was the employee's duty to keep a record of compensable time and overtime worked. WGI audited the policy's effectiveness and took prompt action to correct under-payments. Nonetheless, neither Phillips nor Smitherman ever reported not being paid or being underpaid for any time

worked. Thus, there is no evidence that any overtime violations by WGI were intentional.

Plaintiffs admitted to receiving training about the policy mandating the recording of and payment of time and one-half for all overtime worked over 40 hours in a given week, requiring the taking of an uninterrupted 30-minute lunch break, and obligating employees to report violations or mistakes. They also admitted to completing their time sheets in compliance with this policy and never reported any violations of the policy at any time during their employment or in their exit interviews with the company. Although the records submitted by WGI specifically document weeks when plaintiffs received overtime pay though they had not worked in excess of 40 hours, they have submitted no admissible evidence which reflects any time worked in excess of 40 hours for which they did not receive appropriate compensation. Assuming there is any unpaid overtime, WGI would be entitled to a set-off for any amounts it paid over what the law requires. *See* 29 U.S.C. § 207(h), (e)(5)-(6); *Alexander v. United States*, 32 F.3d 1571, 1577 (Fed. Cir. 1994); *Hesseltine v. Goodyear Tire and Rubber Co.*, 391 F.Supp.2d 509, 521-24 (E.D.Tex. 2005).

Finally, the evidence reflects that neither Phillips nor Smitherman worked for WGI for the two years prior to the filing of their lawsuit and neither has provided any

admissible evidence that any failure to pay overtime was willful so that a three-year statute of limitations would apply. *See* 29 U.S.C. § 255(a).[3] "To establish that the violation of the [FLSA] was willful in order to extend the statute of limitations period, the ***employee*** must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Saxon v. Young*, 479 F.Supp.2d 1243, 1254 (N.D.Ala. 2007); *accord, Reich v. Dep't of Conserv. and Nat. Res.*, 28 F.3d 1076, 1079-81, 1084 (11th Cir. 1994). Phillips' employment with defendant terminated on February 9, 2007; therefore, he had two years from that date, or February 9, 2009, to

---

[3] This statute provides, in pertinent part:

> "Any action . . . to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."

A cause of action for overtime pay is deemed to accrue at each regular payday immediately following the work period during which services were rendered and for which overtime compensation is claimed. *Aly v. Butts County, Georgia*, 841 F.Supp. 1199, 1201 (M.D.Ga. 1994) ("The general rule is that a claim for unpaid overtime wages under the FLSA accrues at the end of each pay period when it is not paid."); *Freeman v. National Broadcasting Co., Inc.*, 846 F.Supp. 1109 (S.D.N.Y. 1993), *rev'd on other grounds*, 80 F.3d 78 (2d Cir. 1996); *Mitchell v. Lancaster Milk Co.*, 185 F.Supp. 66 (M.D.Pa. 1960).

file his FLSA claim. Smitherman's employment with defendant ended on October 27, 2006; therefore, he had until October 27, 2008, to file an FLSA claim. This action was not commenced until March 5, 2009, outside the two-year limitation period set out in 29 U.S.C. § 255. Consequently, plaintiffs' FLSA claims are barred by the applicable statute of limitations.

## CONCLUSION

Based on the foregoing, the court concludes that defendant's Motion for Summary Judgment is due to be granted. Because plaintiffs are not entitled to relief on their individual claims, their Motion to Certify Class Conditionally and to Facilitate 29 U.S.C. §216(b) Notice is due to be denied, and defendant's Motion for Summary Judgment Regarding Opt-Ins is moot. A separate Final Judgment in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 29th day of September, 2010.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE